**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15-cv-9083 |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| MICHAEL SARNO, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, the Court denies Sarno's § 2255 motion [1] and declines to issue a certificate of appealability. Civil case terminated.

**STATEMENT**

The Court assumes familiarity with the facts of the case. Briefly, Michael Sarno was charged in 2009 along with several others with: (1) conspiring to participate in the affairs of a criminal enterprise, which engaged in numerous illegal activities, including but not limited to armed robberies, arson, and using threats, violence, and intimidation to advance the interests of the enterprise, and (2) knowingly conducting an illegal gambling business. (3d Superseding Indictment, *United States v. Sarno*, 08 CR 115, Dkt. # 310.) The criminal enterprise was alleged to have been involved in the bombing of a competitor's video gambling business as well as home and jewelry-store robberies, among other things. After a trial, the jury convicted Sarno of both counts, and the Court sentenced him to 300 months in prison. *United States v. Volpendesto*, 746 F.3d 273, 278 (7th Cir. 2014). Sarno's sentence and conviction were upheld on appeal. *Id.*

In his current motion under 28 U.S.C. § 2255, Sarno alleges the following grounds for relief:

(1) A due process violation based on the government's failure to turn over exculpatory evidence regarding its investigation of another suspect as the leader of the relevant robberies;

(2) Ineffective assistance of counsel based on trial counsel's failure to cross-examine witnesses regarding exculpatory evidence;

(3) Ineffective assistance of counsel in failing to investigate and present evidence that rebutted the government's claims regarding Sarno's leadership role in the enterprise;

(4) A due process violation based on the government's failure to turn over the exculpatory evidence relating the benefits received by its cooperating witness, Mark Hay;

(5) The court erred in classifying him as a career offender under the residual clause of U.S.S.G. § 4B1.2(a)(2), which is worded identically to the residual clause of the Armed Career Criminal Act ("ACCA), which was declared unconstitutional in *Johnson v. United States*, 135 S. Ct. 2551 (2015).

(6) Ineffective assistance of trial counsel for failing to obtain the sealed portion of Hays' sentencing transcript in which the agents discuss the extent of Hays' cooperation;

(7) Ineffective assistance of trial counsel in failing to attempt to rebut the government's factual claims that Sarno was responsible for the robberies committed by his co-defendants.

**Analysis**

Section 2255 allows a defendant to move to vacate, set aside, or correct a sentence that was imposed in violation of the Constitution of the United States. *See* 28 U.S.C. § 2255(a). Relief under § 2255 is an extraordinary remedy, because a § 2255 petitioner has already had "an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).

      A.      <u>Ineffective Assistance of Counsel</u>

A defendant asserting an ineffective assistance of counsel claim must show that counsel's performance was objectively deficient and this lack of competent representation resulted in prejudice. *See United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 687–96 (1993)). To show prejudice, the defendant must demonstrate there is a reasonable probability that but for counsel's mistakes, the result of the proceedings would have been different. *See id*. Regarding the deficient-performance prong, great deference is given to counsel's performance, and the defendant has a heavy burden to overcome the strong presumption of effective performance. *See id*. at 690; *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003) (citation omitted). A defendant must establish specific acts or admissions that fall below professional norms. *Strickland*, 466 U.S. at 690. If one prong is not satisfied, it is unnecessary to reach the merits of the second prong. *Id*. at 697.

          1.      *Failure to Cross-Examine John Scardina*

Sarno contends that his trial lawyer was ineffective for failing to cross-examine John Scardina, a government witness, about inconsistent statements he made regarding who had threatened Vincent Dublino for providing gambling devices on more favorable terms that those offered by Sarno. Sarno contends that when Scardina appeared before the grand jury, he testified that Dublino had told him that Rudy Fratto had sent people to threaten him, but at trial, Scardino testified that it was Sarno who made threats against Dublino. Sarno faults his trial counsel for

2

failing to raise Scardina's purportedly inconsistent statements during cross-examination, particularly in light of the Court's "invitation" to do so after the parties engaged in a sidebar on the issue after all cross-examination had been completed.

As an initial matter, the government states in its response that "Scardina's grand jury statement made clear that Sarno had instructed Dublino to stay away from his stop *and* that Fratto had sought street tax from Dublino." (Gov't's Resp., Dkt. # 9, at 27) (emphasis in original). The government notes that the "Chicago Outfit traditionally collects street tax, namely, extortion payments or 'protection money' required as the cost of operating a legal or illegal business." (*Id.*) (citation omitted). Thus, given that Scardina implicated both Sarno and Fratto as potentially having made threats in his grand jury testimony, there was no inherent inconsistency, and thus no need for impeachment.

In any event, to the extent that counsel wanted to generally discredit Scardina, and his fingering Sarno for the bombing of Dublino's business, he did so in the following exchange during Scardina's cross-examination at trial:

> Q. Well, let me ask you about October 12th [, 2010]. Did you talk to this assistant United States attorney and, again, with Special Agent Thomas Coleman about your grand jury testimony [in a pretrial interview]?
>
> A. Yes.
>
> . . .
>
> Q. On . . . October [12], did you tell them that you gave wrong information to the grand jury, sir?
>
> A. I really don't remember saying that.
>
> Q. Well, do you remember discussing an individual in the gambling business named Rudy Fratto with this assistant United States attorney?
>
> A. Yes.
>
> Q. And do you remember telling him that your testimony in the grand jury regarding this fellow Fratto in the gambling business was wrong?
>
> A. Yes.
>
> Q. You changed that?
>
> A. Yes.
>
> Q. And you remember this assistant United States attorney telling you that here's our grand jury [testimony], you testified to that; is that right, sir?

3

> A. Right.
>
> Q. Did they discuss with you the possibility of being charged with perjury if you changed your testimony from the grand jury, sir?
>
> A. Yeah.
>
> Q. And by they I'm talking about the assistant United States attorney here.
>
> A. Yes.
>
> Q. On . . . those occasions where you said you wanted to change your testimony before the grand jury, they told you that if you did, you could be charged with perjury; isn't that right, sir?
>
> A. Right.

(11/19/10 Trial Tr., Dkt. # 794, at 1105-07.)

Thus, contrary to Sarno's assertion, his trial attorney did cross-examine Scardina about the fact that he told the government prior to trial that he believed his grand jury testimony about Rudy Fratto was inaccurate. Counsel having questioned Scardina's veracity, the jury was left to credit his testimony about any issue, including Sarno's involvement in the bombing, or disregard it.

As noted above, Sarno contends that trial counsel's failure to address Scardina's grand jury testimony about Rudy Fratto on cross-examination was particularly egregious given the discussion that took place during a sidebar after all defense counsel had completed their cross-examinations of Scardina. The government asked for a sidebar prior to its redirect, and requested permission to clarify the basis for Scardina's statement on cross-examination that his grand jury testimony about Rudy Fratto was wrong. (*Id*. at 1113.) The Court allowed the government to proceed with its clarifying questions on redirect, and, according to Sarno, "clearly indicated that it was not precluding the defense from this line of examination [regarding what Scardina said to the grand jury and why] or from impeaching Scardina with his grand jury testimony." (*Id*. at 1117; Pet'r's Mem. Supp. § 2255 Mot., Dkt. # 2, at 13.) While Sarno argues otherwise, this sidebar occurred after all of the defendants' lawyers had had an opportunity to cross-examine Scardina. At the end of the sidebar, however, the government elected not to pursue any redirect examination. (11/19/10 Trial Tr., Dkt. # 794, at 1117.) Thus, while Sarno asserts that the Court's statements at the sidebar were crucial to finding trial counsel's performance deficient, in fact, counsel could not have proceeded with any recross-examination given the government's decision not to engage in redirect.

Assuming trial counsel could have performed additional cross-examination, counsel's decision not to open the door to additional questions about Fratto, who had been indicted in

March 2010 in this district and was alleged to have been a member of the Chicago Outfit, *see United States v. Fratto*, 10 CR 196 (N.D. Ill.), was a permissible strategy and Sarno has provided no basis on which to second guess it. *United States v. Simon*, No. 3:10-CR-0056-RLM, 2016 WL 3597579, at *4 (N.D. Ind. July 5, 2016) ("Because reviewing courts shouldn't second-guess counsel's strategic choices, the burden of showing that counsel's decisions fell outside the wide range of reasonable strategic choices 'rest[s] squarely on the defendant.'") (quoting *Burt v. Titlow*, 134 S. Ct. 10, 12 (2013)).

Moreover, Sarno has failed to establish prejudice given the numerous other witnesses who testified that Sarno was responsible for the Dublino bombing.

2. *Failure to Investigate or Present Evidence Impeaching Mark Hays*

According to Sarno, sentencing counsel was ineffective for failing to make any effort to disprove Mark Hay's testimony linking Sarno to the armed robberies and the arson, which significantly increased his sentence based on relevant conduct. Specifically, Sarno asserts that

> In determining that Mr. Sarno was responsible for the robberies[,] the Court placed enormous emphasis on the testimony of Mark Hay regarding a supposed conversation he claimed to have had with Polchan in which Polchan supposedly prepared Hay to meet Sarno for the very first time:
>
>> One small fact I recall that hasn't been mentioned here, but for some reason you recall some things better than others, was Mr. Polchan's preparation of Mr. Hay the first time he was to introduce Hay to the defendant, Mr. Sarno; how he described to Hay how he should act in front of Sarno, how he should be quiet, how he should be careful, clearly—clearly—considering this a very important person.
>>
>> Now, I sentenced Mr. Polchan previously; and I can tell you, he's not a person, from all that I learned about him, who is easily impressed by anything but raw power. He was clearly impressed by Mr. Sarno. At least that's what he expressed to Mr. Hay.

(Pet'r's Mem. Supp. § 2255 Mot., Dkt. # 2, at 15-16) (citing 2/8/12 Tr. at 40-41).

According to Sarno, despite counsel knowing that Sarno had previously met Hay in 1996 while both were housed in the Metropolitan Correctional Center in Chicago, he "did nothing and left the sentencing court with the false impression that Hay's account was credible." (*Id*. at 16.) But there is no indication that the statement by the Court at Sarno's sentencing was intended as anything other than an observation that Polchan, who was not easily impressed, believed Sarno to be deserving of significant respect because of the power he wielded within the criminal

5

enterprise. The identity of the individual being introduced to Sarno, or that Sarno may have met the person before, is of no significance.[1] The Court mentioned this fact, among others, in concluding that "based upon all of these circumstances, the inferences to be drawn from them, I am well-satisfied and convinced that the government has met its burden in establishing that Mr. Sarno is accountable in the legal sense of the word for the robberies engaged in by his co-defendants, knew of them, sanctioned them, controlled them to a great extent. . . ." (2/8/12 Sentencing Tr., Dkt. # 863, at 41.) Therefore, counsel's failure to correct the Court or somehow attempt to impeach Hay does not support a finding of ineffective assistance of counsel, and the Court denies this basis for relief.[2]

Sarno also contends that counsel was ineffective for failing to corroborate Hay's testimony that he elected not to rob a Greek dice game he had heard about because Polchan told him that "his guy" (whom Hay testified he understood to mean Sarno) said not to go near it. (11/22/10 Trial Tr., Dkt. # 795, at 1442.) According to Sarno, while Hay claimed to have learned about the dice game from an individual named James Formato, "trial counsel never questioned Formato about the alleged dice game." (Pet'r's Mem. Supp. § 2255 Mot., Dkt. # 2, at 16.) But, as the government notes, by not asking Formato about the dice game at trial, counsel was able to assert in his closing argument that Formato did not corroborate Hay's statements about the dice game. (12/17/10 Trial Tr., Dkt. # 812, at 4769.) Sarno does not indicate what Formato's answer would have been had trial counsel asked him about it. Sarno has failed to show that counsel's performance was deficient or that any prejudice resulted from counsel's failure to question Formato about the dice game. Therefore, Sarno's request for relief on this ground is denied.

3. *Failure to Obtain Unredacted Version of Hay's Sentencing Transcript*

According to Sarno, trial counsel was ineffective for failing to obtain an unredacted version of a transcript from a November 1, 2006 supervised release revocation hearing held as to cooperating witness Mark Hay. At the hearing, ATF Agent Tina Sherrow testified regarding the extent of Hay's cooperation in Sarno's criminal case. Her testimony was redacted from the hearing transcript turned over by the government to Sarno, who contends that it constituted "vital" information that was never fully known by the jury or sentencing judge. Other than this conclusory statement, Sarno fails to identify any prejudice from having obtained an unredacted transcript. Moreover, Sarno does not assert that his lawyer was unaware of Hay's cooperation;

---

[1] Further, the government notes that the Court's reference to Hay was a mistake, and that the introduction the Court was referring to was Kyle Knight's introduction to Sarno, not Hay's. (Gov't's Resp., Dkt. # 9, at 30 n.16.)

[2] Sarno's argument in his opening memorandum related solely to what the Court said at sentencing; thus, the Court will not address Sarno's attempt to include additional allegations in his reply brief, including that counsel was ineffective for failing to call Michael Hay at trial.

indeed, as the government notes, Sarno "received thousands of pages of discovery and numerous recordings that evidenced the fact that Hay had cooperated against him and other members of the racketeering conspiracy. . . ." (Gov't's Resp., Dkt. # 9, at 33.)  Further, the jury heard "extensive" testimony from Hay regarding the involvement of Sarno and his co-defendants in the criminal enterprise.  Because Sarno has not established deficient performance or prejudice, this ground for relief is denied.

        4.      *Failure to Rebut Government's Factual Claims that Sarno Was Responsible for the Robberies*

Sarno contends that counsel's performance was deficient at sentencing when he failed to contest the facts upon which the government relied to hold Sarno responsible for six robberies, particularly since the probation officer concluded in the presentence investigation report that only one of the robberies was reasonably foreseeable to Sarno.  This assertion finds no support in the record.  Not only did Sarno's counsel file a sentencing memorandum challenging Sarno's involvement in the robberies (*United States v. Sarno* (N.D. Ill.), 08 CR 115, Dkt. # 678, at 1-13), he argued at the sentencing hearing that the evidence linking Sarno to the robberies was insufficient to hold him accountable for them.  (*Id*., Dkt. # 863, at 19-33.)  The only specific deficiency Sarno points to is counsel's failure to call Lenny DeGrado, the owner of one of the robbed stores, to contradict Hay's testimony that Polchan had Sarno talk to DeGrado to tell him that Polchan had nothing to do with the robbery.  But not only did defense counsel expressly discuss DeGrado during the sentencing hearing, noting that "we know Lenny DeGrado said he never talked to Mike [Sarno]" (*id*. at 30-31), counsel attached to their written objection to the PSI an FBI report noting that DeGrado had denied talking to Sarno about the robbery.  Again, because counsel fails to point to any evidence establishing deficient performance or prejudice, this claim fails.

    B.      <u>Due Process Violation under *Brady*</u>

*Brady v. Maryland*, 373 U.S. 83, requires the government "to disclose evidence that is both favorable to the defense and material to either guilt or punishment." *Boss v. Pierce*, 263 F.3d 734, 740 (7th Cir. 2001).  Its failure to do so can violate a defendant's right to due process. *Id*.  "To establish a Brady violation, a defendant must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material to an issue at trial." *Id*.  "Evidence is material if there is a reasonable probability that its proper disclosure would have led to a different result at trial." *United States v. Wilson*, 481 F.3d 475, 480 (7th Cir. 2007).

        1.      *Failure to Turn Over Exculpatory Evidence Regarding Suspected Leader of Robberies*

7

Sarno contends that the government was pursuing another individual as the leader of the robberies at issue in this case and should have disclosed this information to Sarno. In support, he points to an undated police report written by Commander Jerry Gatlin from the St. Charles Police Department. The report, which attaches a May 28, 2009 press release from the United States Attorney's Office for the Northern District of Illinois regarding new defendants who were indicted in Sarno's criminal case, indicates that it is a "follow-up" memorandum with respect to an investigation Gatlin conducted into multiple robberies of the Goldmine Jewelry Store in St. Charles, Illinois in 2003. In his report, Gatlin states that "[t]his group [of defendants in the federal case] operated at the direction of reputed crime syndicate figure Samuel 'Sammie' Volpendesto of Oak Brook, IL." (Gov't's Resp., Dkt. # 9, Ex. B.) Sarno contends this is exculpatory information that should have been provided to him prior to trial.

Gatlin, however, attests in an unrebutted affidavit submitted by the government that the supplemental report "was added to the case file relating to the Goldmine Jewelry store robberies for informational purposes," he did not participate in the federal investigation described in the press release, he did not know who Sarno was prior to receiving the press release, and he does not know why he wrote that the criminal operation was directed by Sam Volpendesto as that "information is contradicted by the press release I was attempting to summarize." (*Id*., Ex. A, Gatlin Aff., ¶¶ 4-7.) Indeed, as noted by the government, the press release itself states that "[n]ew defendant, Michael Sarno, allegedly oversaw, directed and guided certain of the group's illegal activities . . . ." (*Id*., Ex. A, at 5.) Sarno has not demonstrated that this single inaccurate statement by an individual who was completely uninvolved in the federal prosecution of Sarno and his co-defendants was material, suppressed by the government, unable to be obtained by him independently, or prejudicial. Therefore, this basis for relief is denied.

        2.    *Failure to Turn Over Exculpatory Evidence Regarding Benefits Received by Mark Hay*

Sarno asserts that in exchange for cooperating with and testifying for the government, Hay received "benefits" with respect to state court criminal proceedings stemming from several residential burglaries he committed. Sarno asserts that the government "injected itself into the state investigation of Hay's burglaries and directly communicated with state authorities on Hay's behalf." (Pet'r's Mem. Supp. §2255 Mot., Dkt. # 2, at 17.) According to Sarno, "[t]his material, impeaching evidence of the government's main witness would have affected both the trial and the sentencing, where the Court relied extensively on Hay's testimony." (*Id*.)

Sarno fails to specify benefits Hay received or that the government suppressed them. The government does not dispute that they were notified by local law enforcement officials when Hay was arrested for the residential burglaries and recording devices were discovered in Hay's vehicle. A federal agent confirmed Hay's explanation to local law enforcement that he was a federal informant, and after Hay had a conversation with the federal agent, Hay cooperated with

local law enforcement authorities. (Gov't's Resp., Dkt. # 9, Ex. B.) The report regarding this incident by local law enforcement was produced to Sarno prior to trial and Hay was cross-examined on this topic at trial. (11/23/10 Trial Tr., *United States v. Sarno*, 08 CR 115, Dkt. # 796, at 1528-29.) Hay testified that no one from the federal government intervened in the state court proceedings to seek a reduced sentence on his behalf for the burglary convictions. (11/19/10 Trial Tr., Dkt. # 794, at 1197-98.) Thus, Sarno has not demonstrated that the government suppressed any material information that was favorable to the defense, or that any prejudice occurred as a result.

In his motion, Sarno asserts that "the government never disclosed that Hay had requested that the agents go visit Hay's son and see what they could do for him." (Pet'r's § 2255 Mot., Dkt. # 1, at 6.) But Hay's son, Michael Hay, attests in his affidavit only that while he was incarcerated, ATF Special Agent Sherrow visited him and told him that his father, Mark, asked that in return for his cooperation, authorities visit Michael to see "'what they could do' to help with my legal troubles." (*Id.*, Ex. G, Dkt. # 1-1, ¶ 11.) But he does not indicate that he received any such help, nor does Sarno point to any evidence that Michael Hay received any assistance from the government in his state court criminal proceeding.

Because Sarno has failed to show that the government committed a *Brady* violation with respect to purported benefits their cooperating witness, Mark Hay, received, this ground for relief is denied.

C. *Johnson* Claim

Finally, citing to *Johnson v. United States*, 125 S. Ct. 2551 (2015), Sarno argues that he was erroneously classified as a career offender under the Sentencing Guidelines definition of a "crime of violence," which enhanced his sentencing range. In *Johnson*, the United States Supreme Court found the residual clause of the ACCA to be unconstitutionally vague. Here, Sarno seeks to apply this same reasoning to § 4B1.2(a)(2) of the Sentencing Guidelines, which contains wording identical to ACCA.

As noted by the government in its supplemental filing as requested by the Court, the Supreme Court recently granted *certiorari* in *Beckles v. United States*, No. 15-8544, 616 F. App'x. 415 (11th Cir. 2015), to address whether *Johnson* applies to § 4B1.2(a)(2) of the Sentencing Guidelines, and whether *Johnson* applies retroactively to cases challenging federal sentences imposed pursuant to this section on collateral review.

This Court, however, need not address the merits of Sarno's argument because it indicated at his sentencing that it would impose the same sentence even if it incorrectly calculated Sarno's sentencing range. (*United States v. Sarno*, 08 CR 115, Dkt. # 863, at 92 ("The Court finds that the sentence of 300 months that I have imposed with respect to the custody is appropriate in this case even if it were to be found that the sentence exceeds the

properly calculated guideline range.").) The Court explained its reasons for so concluding in detail. (*Id*. at 92-94.)

Therefore, this ground for relief is denied.

**Conclusion**

For the reasons stated above, the Court denies Sarno's § 2255 motion. Moreover, a habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); 28 U.S.C. § 2253(c)(2). Under this standard, the petitioner must demonstrate that, "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Id*. (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). As to Sarno's claims, the Court finds that reasonable jurists would not debate that the petition does not present a valid claim of the denial of a constitutional right or that the petition should have been resolved in a different manner. Therefore, the Court declines to certify any issues for review pursuant to 28 U.S.C. § 2253(c). Civil case terminated.

**Date**: August 30, 2016

_____
**Ronald A. Guzmán**
**United States District Judge**